**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **CHAD KENDALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 3:26-cv-00012** |
| | ) | |
| **v.** | ) | **JUDGE: THOMAS ROSE** |
| | ) | |
| **YAMADA NORTH AMERICA, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# FIRST AMENDED COMPLAINT

Plaintiff Chad Kendall, ("Plaintiff"), on behalf of himself and all others similarly situated, for his Complaint against Defendant Yamada North America, Inc. ("Defendant"), states and alleges as follows:

## INTRODUCTION

1. This case challenges policies and practices of Defendant that violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, Ohio Revised Code § 4111.03 and 4111.031, Ohio's common law of unjust enrichment, and Ohio's Prompt Pay Act.

2. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. §216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." Plaintiff brings this case on behalf of himself and other "similarly situated" persons who may join this case pursuant to §216(b) (the "Opt-Ins").

3. Plaintiff also brings this case as an opt-in action under Ohio Rev. Code §4111.10(C), which also provides that "all similarly situated employees" may join an action for unpaid overtime wages upon giving of "written consent to become such a party plaintiff and that consent is filed with the court in which the action is brought."

4. Plaintiff also brings this claim as a class action pursuant to Fed. R. Civ. P. 23 to remedy violations of the Ohio's common law of unjust enrichment on behalf of all hourly workers subject to Defendant's uniform donning/doffing policy and currently or previously employed by Defendant within the four years preceding the filing of this Action.

5. Plaintiff also brings this claim as a class action pursuant to Fed. R. Civ. P. 23 to remedy violations of the Ohio's Prompt Pay Act on behalf of all hourly workers who were not paid one-and-one-half their regular rate of pay for all overtime hours by Defendant within the two years preceding the filing of this Action.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

7. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendant conducts business throughout this District and Division and because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District and Division.

8. The Court has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the FLSA claims as to form part of the same case or controversy.

## PARTIES

9. Plaintiff is an adult individual residing in South Charleston, Ohio.

10. Within the three years preceding the filing of this Action, Plaintiff was employed by Defendant as a non-exempt employee who was paid on an hourly basis.

11. At all relevant times, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e).

12. Defendant Yamada North America, Inc. has its principal place of business in the District and Division, located at 9000 Columbus Cincinnati Rd, South Charleston, Clark County Ohio 45368.

13. Defendant Yamada North America, Inc. is a for-profit Ohio corporation that is registered as a domestic corporation in Ohio. Defendant Yamada North America, Inc. can be served through its statutory agent: Acme Agent, Inc. 41 South High Street Ste 2800 Columbus, Ohio 43215.

14. At all relevant times, Defendant was an employer within the meaning of 29 U.S.C. § 203(d).

15. At all relevant times, Defendant comprised an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

16. At all relevant times, Plaintiff was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

17. Plaintiff's written consent to join this action was previously filed.

18. Through the employment practices described below, Plaintiff and similarly situated employees were not being paid for all hours worked, and were not paid overtime compensation at the rate of one-and-one-half times their regular rate of pay for all of the hours they worked in excess of forty (40) each workweek.

## FACTUAL ALLEGATIONS

### Employees' Donning/Doffing of Uniforms and PPE

19. Plaintiff began working for Defendant as a second shift Maintenance Tech 2 on or around October 23, 2023.

20. Plaintiff and similarly situated employees were non-exempt employees under the FLSA and were paid an hourly wage.

21. Plaintiff and similarly situated employees were not members of a union and were not parties to or otherwise subject to a collective bargaining agreement.

22. As a Maintenance Tech 2 Plaintiff's duties primarily consisted of maintaining, repairing, and cleaning the machinery and equipment Defendant's employees used to manufacture automobile parts.

23. Defendant provided a uniform for Plaintiff and similarly situated employees.

24. Defendant specifically directed Plaintiff and similarly situated employees to wear a uniform provided by Defendant.

25. Depicted below is the company's policy, contained in Defendant's employee handbook, regarding that uniform requirement:



COMPANY UNIFORMS

YNA provides each associate an appropriate number of YNA uniforms, which are required to be worn while on the job. The uniforms are worn not only to promote safety in the production environment but also to promote the idea of team work. Ball caps are also provided to be worn in designated areas. Uniforms are cleaned at YNA's expense. They may not be altered in any way without prior permission. If you experience any problems with uniform shortages, you must notify Administration immediately. Otherwise, failure to wear the YNA uniform will result in disciplinary action as noted in the Progressive Discipline Guidelines section of this Handbook.

Associates may choose to wear their uniforms to work; however, each associate is provided a locker and key and may choose to change into their uniform at YNA.

Because wearing a uniform contaminated with blood out of the facility is in violation of OSHA's Blood Borne Pathogens standard, associates are encouraged to keep at least one (1) clean uniform in their lockers in case of an accident or emergency.

26. That uniform is required because, as part of performing their duties for Defendant, Plaintiff and similarly situated employees were exposed to a number of hazardous materials like metal shavings, welding dust, solvents, oil, and hydraulic fluid, as well as hazardous conditions like fire hazards and chemical hazards

27. As a result, as stated in the policy shown above in Paragraph 25, Plaintiff and similarly situated employees of Defendant were required by OSHA standards to wear a clean uniform every day.

28. Plaintiff's uniform is not ordinary clothing, but rather consisted of a single piece, flame retardant "coverall" that fully covered his torso, arms, and legs, as well as protective footwear, ear protection, and eye protection.

29. In addition to his uniform and standard protective equipment, depending on the duties that they had to perform in a given shift, Plaintiff and similarly situated employees were required to wear additional personal protective equipment ("PPE") such as a respirator and a full coverage "clean suit" over his normal uniform.

30. As stated in the policy above, Defendant provided an on-site locker room for their employees, including Plaintiff, to change into and out of their uniform and PPE.

31. The hazardous materials Plaintiff was exposed to as part of his work duties had the potential injure him.

32. For example, the hazardous materials posed a risk of thermal burns (due to the material's combustibility), chemical burns, mechanical irritation, and/or transmission of pathogens among other hazards.

33. As part of performing his duties as a Maintenance Tech 2 Plaintiff operated on and around machinery that could injure him.

34. For example, the machinery and equipment posed a risk of a pinch hazard, crush hazard, thermal burn hazard, entanglement hazard, and/or unsafe decibel levels among other dangerous conditions.

35. As a result, exposure to hazardous materials and conditions was an unavoidable and integral part of the work of Plaintiff and similarly situated employees.

36. Defendant acknowledged, including in the handbook excerpt depicted above in Paragraph 25, that hazardous materials and conditions in the workplace posed the risk of injury to employees.

37. Employees' uniform and PPE helped to keep them safe from hazardous materials and hazardous conditions, and Plaintiff and similarly situated employees could not have safely and effectively performed their job duties without wearing their uniforms and PPE.

38. Moreover, as part of performing a protective function, employees' uniforms became covered with various hazardous substances over the course of a workday.

39. The substances that contaminated their uniforms over the course of a workday pose a health and safety risk outside of Defendant's facility, including to the general public.

40. For instance, driving home in soiled uniforms and wearing them into their homes would have further exposed Plaintiff, similarly situated employees, and their families to hazardous materials like metal shavings, welding dust, solvents, oil, and hydraulic fluid.

41. Defendant provided a laundry service for cleaning employees' uniforms in order to ensure uniforms were kept in a safe and sanitary condition, able to protect the wearer.

42. Defendant contracted with a third-party uniform supply company to provide that laundry service with the knowledge and experience in cleaning uniforms contaminated by hazardous substances that could pose a health and safety risk to the general public.

43. The third-party uniform supply company had access to commercial equipment designed to clean uniforms contaminated by hazardous substances that could pose a health and safety risk to the general public.

44. Plaintiff, Defendant's similarly situated employees, and their family members were not trained by Defendant on how to safely clean uniforms contaminated by hazardous substances that could pose a health and safety risk to the general public.

45. Plaintiff, Defendant's similarly situated employees, and their family members were not given access to equipment designed to safely clean uniforms contaminated by hazardous substances that could pose a health and safety risk to the general public.

46. Plaintiff, Defendant's employees, and their family members were not given or required by Defendant to have in their homes containers that met OSHA requirements for safely storing combustible waste material and residues (29 CFR 1910.106(e)(9)(iii)).

47. Defendant knew or should have known that storing fabrics soiled with combustible materials in their homes without the proper containers was unsafe for Plaintiff and his co-workers because on June 20, 2013 Defendant received OSHA Citation Number 01001 for "Combustible waste material and residues in a building or unit operating area were not kept to a minimum, stored in covered metal receptacles and disposed of daily: (a) Soiled rags used to clean up hydraulic fluid, oil and WD-40 were not stored in closed metal containers" along with a $5,000.00 fine.

48. As a result of the hazards and facts as stated in the preceding paragraphs, though Defendant's policy ostensibly permits employees to bring uniforms home and change into them before arriving at Defendant's facility, the vast majority of Defendant's employees don, doff, and launder their uniforms at the facility as a matter of practical necessity.

49. Thus, at the beginning of his workday, Plaintiff and similarly situated employees would arrive at the workplace in their "street" clothes then go to the locker room so they could put on their uniforms and PPE.

50. Putting on their uniforms and PPE was the first principal activity of the workday for Plaintiff and similarly situated employees.

51. Based on his best recollection and estimate, putting on his uniform and PPE and walking to his workstation would take Plaintiff at least fifteen (15) minutes at the beginning of each workday.

52. At the end of his workday, Plaintiff would walk to the locker room and remove his uniform and PPE he had been wearing that day.

53. Taking off his uniform and other PPE was Plaintiff's last principal activity of the workday.

54. Based on his best recollection and estimate, walking to the locker room, removing the uniform and PPE and then changing into "street" clothes would take Plaintiff at least fifteen (15) minutes at the end of his workday.

55. Defendant did not pay employees for the donning and doffing of uniforms and PPE.

56. Plaintiff, as a full-time employee, regularly worked over 40 hours in a workweek in the three years preceding the filing of this Action, even exclusive of donning and doffing time.

57. Defendant's employees donned and doffed their uniforms at Defendant's facility pursuant to custom and/or practice, including the directives in Defendant's employee handbook.

**Defendant's Failure to Pay Overtime Pay at the Legally-Mandated Rate**

58. The FLSA and Ohio law require covered employers to pay non-exempt employees overtime compensation at one and one-half times their "regular rate" for all hours worked in excess of forty hours per workweek. 29 U.S.C. § 207; Ohio Rev. Code § 4111.03.

59. Plaintiff and similarly situated employees were all non-exempt from overtime pay under 29 U.S.C. § 207 and Ohio Rev. Code Ann. § 4111.03.

60. Plaintiff and similarly situated employees frequently worked more than forty hours per week, entitling them to overtime compensation under the FLSA and Ohio law.

61. Defendants regularly and systematically failed to calculate employees' regular rate of pay and overtime premium calculations correctly for Plaintiff and similarly situated employees.

62. By way of example, Chad Kendall's hourly rate of pay for 2nd shift – which is the shift he primarily worked – was $28.00 in October 2024, meaning that his overtime rate in a week where he worked 2nd shift only and earned no other remuneration should have been $42.00.

63. However, in such workweeks, Defendant paid Chad Kendall only $41.13 per hour.

Earnings Statement KENDALL, CHAD

| | | | |
|---|---|---|---|
| Pay Date: | 10/17/2024 | Company: 13M58 - YAMADA NORTH AMERICA INC | Emp #: A20H |
| Period Start: | 10/07/2024 | 9000 COLUMBUS CINCINNATI RD | Dept: 3550550550 - Production Maint Dept |
| Period End: | 10/13/2024 | S CHARLESTON OH 45368 | Pay Basis: Hourly |

| | Rate | Hours/Units | Current Period | Year To Date | |
|---|---|---|---|---|---|
| **Earnings** | | | | | |
| Regular | 0.00 | 0.00 | 0.00 | 673.00 | |
| Attendance Premium DT - DNU | 0.00 | 0.00 | 0.00 | 106.62 | |
| Attendance Premium OT - DNU | 0.00 | 0.00 | 0.00 | 168.74 | |
| Double Time 1st Shift | 0.00 | 0.00 | 0.00 | 28.74 | |
| Double Time 2nd Shift | 0.00 | 0.00 | 0.00 | 4396.45 | |
| Overtime2 | 0.00 | 0.00 | 0.00 | 6719.29 | |
| Accrual Earned 14 | 0.00 | 8.00 | 0.00 | 0.00 | |
| Call In Vacation | 0.00 | 0.00 | 0.00 | 383.20 | |
| DT 2nd Shift | 54.25 | 0.00 | 0.00 | 446.48 | |
| Earned - 14 - DNU | 24.45 | 0.00 | 0.00 | 195.60 | |
| Free Day 1 - DNU | 24.45 | 0.00 | 0.00 | 195.60 | |
| Holiday | 0.00 | 0.00 | 0.00 | 1344.40 | |
| Hourly 2nd Shift | 28.00 | 40.00 | 1120.00 | 12999.94 | |
| OT 2nd Shift | 41.13 | 0.15 | 6.17 | 2803.39 | |
| Reg2 | 0.00 | 0.00 | 0.00 | 26946.45 | |
| Shut Down Time Later | 0.00 | 0.00 | 0.00 | 664.20 | |
| Attendance Premium | | | 26.40 | 1043.87 | |
| Attendance Premium DT | | | 0.00 | 21.64 | |
| Attendance Premium OT | | | 0.15 | 85.99 | |
| Bonus | | | 0.00 | 886.15 | |
| GTL 50N401 | | | 0.05 | 0.60 | In/Out |

64. Defendant's practice of miscalculating employees' regular rate of pay had the effect of circumventing the payment of proper overtime compensation, and is provable by examining the affected employees' payroll records and data.

65. As a result of practices such as those described in Paragraphs 61 through 63, Plaintiff and similarly situated non-exempt employees were deprived of overtime pay, and Defendant wrongfully withheld many thousands of dollars per pay period in overtime pay that was due and owing.

## The Willfulness of Defendants' Violations

66. Defendant knew that Plaintiff and similarly situated employees were entitled to compensation for all hours worked and overtime compensation for hours over 40 in a workweek under both federal and state law or acted in reckless disregard for whether they were so entitled.

67. Defendant intentionally and willfully circumvented the requirements of the FLSA and state law.

68. For instance, Defendant requires employees to don/doff uniforms and PPE, and knows that employees cannot reasonably do so at home.

69. Defendant further knows, as a result of the hazards of donning and doffing uniforms and PPE at home, the vast majority of its employees don and doff their uniforms on-site, in Defendant's locker room.

70. Yet, Defendant designed it scheduling, timekeeping, and payroll policies and practices so as to prevent employees from being compensated for that integral part of their workday.

71. Moreover, Defendant was fully aware of the federal and state law mandates that employees' overtime hours be paid at one-and-one-half their "regular rate of pay."

72. Nevertheless, Defendant knowingly or recklessly designed its payroll practices to create the

appearance of properly paying overtime while unlawfully shaving dollars owed to employees.

## COLLECTIVE/OPT-IN ACTION ALLEGATIONS

73. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

74. Plaintiff brings this action on his own behalf and, pursuant to 29 U.S.C. § 216(b) and Ohio Rev. Code § 4111.10, on behalf of all other similarly situated persons who have been, are being, or will be, adversely affected by Defendant's unlawful conduct described above.

75. There are two groups of similarly situated employees that Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff is himself a member.

76. The first group, referred to hereinafter as the "Donning/Doffing Collective" is comprised of and defined as follows:

> **All former and current non-exempt employees of Defendant who, in the three years preceding the filing of this Action to the present, worked one or more workweeks in excess of 40 hours and were required to don and doff protective equipment such as a flame-retardant uniform, protective eyewear, ear protection, protective boots, and/or other personal protective equipment.**

77. The second group, referred to hereinafter as the "Regular Rate Collective" is comprised of and defined as follows:

> **All former and current non-exempt employees of Defendant who, in one or more workweeks within the three years preceding the date of the filing of this Action to the present, were paid less than one-and-one-half their regular rate of pay for all overtime hours worked.**

78. When referred to collectively, the employees comprising these groups are referred to as the "Potential Opt-Ins"

79. This action is maintainable as an "opt-in" action pursuant to 29 U.S.C. § 216(b) and Ohio Rev. Code § 4111.10(C) as to claims for unpaid overtime compensation, liquidated damages,

attorneys' fees and costs. In addition to Plaintiff, numerous Potential Opt-Ins are similarly situated with regard to their claims for unpaid wages and damages. Plaintiff is representative of those other employees and are acting on behalf of their interests as well as his own in bringing this action.

80. These similarly situated persons are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b) and Ohio Rev. Code § 4111.10(C), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA and Ohio law.

## CLASS ALLEGATIONS

81. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

82. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of himself and two classes of current or former employees of Defendant in Ohio.

83. The first, referred to hereinafter as the "Donning/Doffing Class" is defined as:

> **All former and current non-exempt employees of Defendant who, within the four years preceding the date of filing of this Action to the present, worked one or more workweeks in excess of 40 hours and were required to don and doff protective equipment such as a uniform or PPE.**

84. The second, referred to hereinafter as the "Regular Rate Class" is defined as:

> **All former and current non-exempt employees of Defendant who, within the two years preceding the date of filing of this Action to the present, in one or more workweeks, were paid less than one-and-one-half their regular rate of pay for all overtime hours.**

85. The Classes are so numerous that joinder of all class members is impracticable. Plaintiff is unable to state the exact size of the Classes but, upon information and belief, aver that they consist of at least five hundred persons.

86. There are questions of law or fact common to the Donning/Doffing Class including: whether Defendant failed to pay its employees for donning and doffing time and associated travel, whether that resulted in the underpayment of overtime, and whether permitting Defendant to retain the monies that would have been paid to the Donning/Doffing Class for their donning and doffing time would unjustly enrich Defendant.

87. There are questions of law or fact common to the Regular Rate Class including: whether Defendant failed to pay its employees one-and-one-half times their regular rate of pay for all overtime hours on a weekly basis, and whether that resulted in the underpayment of overtime, whether any overtime underpayments violated Ohio's Prompt Pay Act.

88. Plaintiff will adequately protect the interests of the Classes. His interests are not antagonistic to but, rather, are in unison with, the interests of the Class members. Plaintiff's counsel has broad experience in handling class action wage-and-hour litigation, and is fully qualified to prosecute the claims of the Classes in this case.

89. The questions of law or fact that are common to the Classes predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the Classes, listed above, are common to the Classes as a whole, and predominate over any questions affecting only individual class members.

90. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and

demands on court resources. Many Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all Class members with the efficiencies of class litigation.

**COUNT ONE**
**(FLSA OVERTIME VIOLATIONS)**

91. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

92. Plaintiff brings this claim as an opt-in action on behalf of all Potential Opt-Ins.

93. Defendant's practice and policy of not paying Plaintiff and other similarly situated employees for all overtime hours worked at a rate of one and one-half times their regular rate of pay for all hours worked over forty (40) each workweek violated the FLSA, 29 U.S.C. §§ 201-219, 29 C.F.R. § 785.24.

94. Defendant's failure to keep records of all hours worked for each workday and the total hours worked each workweek by Plaintiff and other similarly situated employees violated the FLSA, 29 U.S.C. §§ 201-219, 29 C.F.R. § 516.2(a)(7).

95. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated provisions of the FLSA.

96. As a result of Defendant's practices and policies, Plaintiff and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

**COUNT TWO**
**(OHIO OVERTIME VIOLATIONS)**

97. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

98. Plaintiff brings this claim as an opt-in action on behalf of all Potential Opt-Ins.

99. Ohio Rev. Code § 4111.03(A) required that Defendant's non-exempt employees receive overtime compensation for all hours worked in excess of 40 in a workweek.

100. At all relevant times, Plaintiff and similarly situated persons were non-exempt employees of Defendant.

101. Plaintiff and similarly situated persons regularly worked forty (40) or more hours per workweek.

102. As non-exempt employees, Plaintiff and similarly situated persons should have been paid overtime compensation at the rate of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per workweek.

103. Defendant violated Ohio Rev. Code § 4111.03(A) with respect to Plaintiff and similarly situated persons by failing to pay all overtime pay due for all hours worked over 40 hours in a workweek.

104. Defendant's violations of Ohio Rev. Code § 4111.03(A) injured Plaintiff and similarly situated persons in that they did not receive overtime compensation due to them pursuant to that statute. Accordingly, Plaintiff and similarly situated persons are entitled to their unpaid overtime compensation, attorneys' fees, and costs.

**COUNT THREE**
**(UNJUST ENRICHMENT)**

105. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

106. Plaintiff brings this claim seeking class certification on behalf of the Donning/Doffing

Class.

107. Plaintiff and the Donning/Doffing Class conferred a benefit upon Defendant by providing extensive labor and services for which they were not properly compensated.

108. Defendant knew it was receiving a benefit by retaining and utilizing that labor while failing to provide legally-required overtime premiums for overtime hours worked.

109. Defendant intentionally designed and maintained its pay practices to obtain and retain the benefit of employees' work without providing full and fair payment.

110. Defendant's retention of the benefit of that unpaid work under these circumstances is inequitable and unjust.

111. Plaintiff and the Donning/Doffing Class are therefore entitled to recover from Defendant the reasonable value of their unpaid labor and services.

**COUNT FOUR**
**(OHIO PROMPT PAY ACT VIOLATION)**

112. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

113. Plaintiff brings this claim seeking class certification on behalf of the Regular Rate Class.

114. Ohio's Prompt Pay Act, Ohio Rev. Code Ann. § 4113.15(A), provides that "[e]very employer doing business in this state shall, on or before the first day of each month, pay all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month."

115. Defendant's failure to pay all wages due under Ohio's Prompt Pay Act to

Plaintiff and the Regular Rate Class Members entitles them to the unpaid wages, plus "an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater."

WHEREFORE, Plaintiff prays that this Honorable Court:

a) Pursuant to 29 U.S.C. § 216(b), direct that Court-approved notice be issued to similarly situated persons informing them of this action and enabling them to opt-in;

b) Certify this case as a "collective action" pursuant Ohio Rev. Code § 4111.10 and direct that Court-approved notice be issued to similarly situated persons informing them of this action and enabling them to opt-in;

c) Enter judgment against Defendant in favor of Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b) and Ohio Rev. Code § 4111.10, and the Classes;

d) Award Plaintiff and the putative Opt-Ins liquidated damages equal in amount to the unpaid wages found due to them;

e) Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Donning/Doffing and Regular Rate Classes;

f) Award Plaintiff and the Donning/Doffing Class actual damages for unpaid wages;

g) Award Plaintiff and the Regular Rate Class actual damages for unpaid wages plus liquidated damages under Ohio Rev. Code § 4113.15;

h) Award Plaintiff, the putative Opt-Ins, and/or the Ohio Class pre-judgment and post-judgment interest at the statutory rate;

i) Award Plaintiff, the putative Opt-Ins, and/or the Ohio Class attorneys' fees, costs, and disbursements; and

j) Award Plaintiff, the putative Opt-Ins, and/or the Ohio Class further and additional relief as this Court deems just and proper.

Respectfully submitted,

s/ Scott D. Perlmuter

Scott D. Perlmuter (0082856)
4106 Bridge Ave.
Cleveland, Ohio 44113
216-222-2222
scott@tittlelawfirm.com

Counsel for Plaintiffs

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

s/ Scott D. Perlmuter
Scott D. Perlmuter (0082856)

## CERTIFICATE OF SERVICE

I hereby certify that, on February 13, 2026, the foregoing was filed and served on all counsel of record via ECF upon counsel for parties who have appeared.

/s/ Scott D. Perlmuter
Scott Perlmuter (0082856)