**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| CHAD KENDALL, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:26-cv-12 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| YAMADA NORTH AMERICA, INC., | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |

---

**ENTRY AND ORDER DENYING DEFENDANT YAMADA NORTH AMERICA,
INC.'S PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED
COMPLAINT AND MEMORANDUM IN SUPPORT (DOC. NO. 7)**

---

Presently before the Court is Defendant Yamada North America, Inc.'s Partial Motion to Dismiss Plaintiff's Amended Complaint and Memorandum in Support (the "Motion") (Doc. No. 6). Plaintiff Chad Kendall ("Kendall"), a maintenance technician for Defendant Yamada North America, Inc. ("Yamada"), brings this case pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code § 4111.01, *et seq.* ("OMFWSA"), on behalf of himself and similarly situated employees. (*See* Doc. No. 6.) He similarly pleads class action claims for unjust enrichment and failure to timely pay wages under the Ohio Prompt Pay Act, Ohio Rev. Code § 4113.15 ("OPPA"). In short, Kendall believes that Yamada should be required to pay him and his cohorts overtime wages for the time spent before and after each shift donning and doffing their uniforms. (*Id.* at PageID 45-52.) By its current Motion, Yamada argues that such activity is not compensable as a matter of law under either the FLSA or the OMFWSA. (Doc. No. 7 at PageID 62.) Yamada additionally argues that,

1

whether or not Kendall's FLSA claim survives, the Court should not exercise supplemental jurisdiction over Kendall's state law causes of action. (*Id.*) As explained below, the Court **DENIES** Yamada's Motion.

## I.   BACKGROUND

As stated in the First Amended Complaint (the "Amended Complaint") (Doc. No. 6), Kendall was, at all times relevant here, employed as a maintenance technician for Yamada, paid on an hourly basis. (Doc. No. 6 at PageID 44-45.) Kendall claims that he began working for Yamada on or around October 23, 2023, and, throughout his tenure, neither he nor his fellow technicians engaged in collective bargaining with the company. (*Id.* at PageID 45.) In substance, Kendall's main duties purportedly consisted of "maintaining, repairing, and cleaning the machinery and equipment [Yamada's] employees used to manufacture automobile parts." (*Id.*)

As part of the job, Yamada allegedly required Kendall and his coworkers to wear a company-issued uniform. (*Id.*) This uniform was made up of protective footwear, ear protection, eye protection, and flame-retardant coveralls meant to cover the wearer's torso, arms, and legs. (*Id.* at PageID 46.) Yamada's company policy supposedly required maintenance technicians to wear their uniforms "not only to promote safety in the production environment but also to promote the idea of teamwork." (*Id.* at PageID 45.) Practically speaking, Kendall avers that his uniform was necessary to protect against inherent dangers of the job such as, exposure to hazardous materials—to include "metal shavings, welding dust, solvents, oil, and hydraulic fluid"—and general fire and chemical hazards. (*Id.* at PageID 46.) In particular, the hazards that Kendall and his coworkers were unavoidably exposed to on the job allegedly posed various risks of burns, mechanical injury, and transmission of pathogens. (*Id.* at PageID 46-47.)

Per company policy, Yamada provided employees, like Kendall, with a locker room where they could change into and out of their uniforms before and after each shift, respectively. (*Id.* at PageID 46.)  Although technicians were permitted to take their uniforms home and change there, Kendall claims that he and the vast majority of his colleagues changed in Yamada's locker room. (*Id.* at PageID 48.)  To that end, Yamada allegedly provided its employees with laundry services to ensure that their uniforms were clean and compliant with OSHA standards. (*Id.* at PageID 47-48.)  Kendall states that he and his coworkers availed themselves of Yamada's locker room and laundry services because changing and laundering their uniforms at home was practically impossible. (*Id.* at PageID 48.)  Apparently, Yamada did not provide its employees with the tools necessary to safely store and clean their uniforms and protective gear off-site. (*Id.*)

Nevertheless, Kendall alleges that he and his fellow maintenance technicians went unpaid for the time spent each day donning and doffing their uniforms. (*Id.* at PageID 49.)  All told, Kendall estimates that he spent approximately 30 minutes each day on donning and doffing his uniform. (*Id.*)  Consequently, Kendall says, he and his cohorts "worked," as that term is defined within the FLSA context, more than 40 hours per week without receiving overtime wages. (*Id.*)  Hence, the instant action.

Kendall initially brought this suit by filing his Complaint (Doc. No. 1) on January 12, 2026.  About a month later, on February 13, 2026, Kendall amended his Complaint as a matter of course. (Doc. No. 6.)  By his Amended Complaint, Kendall alleges a collective action pursuant to the FLSA and OMFWSA on behalf of himself and similarly situated Yamada employees, claiming entitlement to overtime wages for time spent donning and doffing the company uniform each workday. (*Id.* at PageID 55-56.)  In addition, Kendall pleads class actions for unjust enrichment

and violations of OPPA, similarly based upon Yamada's failure to pay overtime wages for donning and doffing. (*Id.* at PageID 56-58.)

Yamada then quickly submitted its current Motion on February 27, 2026. (Doc. No. 7.) Kendall responded to the Motion on April 17, 2026 (Doc. No. 11), and Yamada filed its final reply in support the Motion on May 1, 2026 (Doc. No. 12). The Court now considers this matter ripe for review and decision.

## II. STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 897 (S.D. Ohio 2013) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard is not the same as a probability standard, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). Thus, if a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true and construe them in a light most favorable to the non-moving party. *Id.* at 554-55. However, the Court is not bound to accept as true a legal conclusion couched as a factual

4

allegation. *Id.* at 555-56. "In evaluating a motion to dismiss [a court] may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (internal quotation marks omitted).

For claims brought pursuant to state law, "[a] federal court sitting in diversity must apply the substantive law . . . of the state in which it sits." *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994) (citing *Klaxon Co. v. Stenor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)); *Clutter v. Johns-Manville Sales Corp.*, 646 F.2d 1151, 1153 (6th Cir. 1981). To the extent that the state's highest court has not addressed the issue presented, the federal court must anticipate how the state's highest court would rule. *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)). Moreover, "[i]f the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it." *Clutter*, 646 F.2d at 1153.

## III. <u>ANALYSIS</u>

Yamada characterizes its Motion as a partial motion to dismiss, but in effect, Yamada seeks dismissal of the Amended Complaint in its entirety. (*See* Doc. No. 7 at PageID 80.) Primarily, Yamada argues that the donning and doffing of Kendall's uniform does not amount to compensable work and, therefore, Kendall and his coworkers are not entitled to overtime wages under the FLSA and OMFWSA. (*Id.* at PageID 68-74.) Yamada further submits that Kendall's OPPA claim is foreclosed to him and the proposed class because the wages placed at issue by that cause of action are disputed. (*Id.* at PageID 66-68.) By any measure, Yamada finally proposes that, where Kendall's state law claims would predominate and give way to a hybrid action, the

Court should not exercise supplemental jurisdiction over Kendall's claims for unjust enrichment and OPPA violations.  (*Id.* at PageID 74-80.)  The Court takes each of Yamada's arguments in turn.

###    a.  **FLSA and OMFWSA**

Initially, with respect to the FLSA and OMFWSA, the Court would establish some common principles.  To start, "[t]he [OMFWSA] 'parallels the FLSA,'" and courts utilize FLSA standards when considering claims made pursuant to the state law.  *Hurt v. Com. Energy, Inc.*, 973 F.3d 509, 517 (6th Cir. 2020) (quoting *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 69 n.2 (6th Cir. 1997)).  Broadly, "[u]nder the FLSA, employers must pay their employees an overtime wage at 'a rate not less than one and one-half times the regular rate at which they are employed' for hours worked in excess of forty hours per week."  *Franklin v. Kellogg Co.*, 619 F.3d 604, 610 (6th Cir. 2010) (quoting 29 U.S.C. § 207(a)(1)) (cleaned up) (additional citations omitted).  "To state an overtime claim under the FLSA, a plaintiff must allege: (1) an employer-employee relationship; (2) the employer or its employees engaged in interstate commerce; (3) the employee worked more than forty hours in a workweek; and (4) overtime was not paid."  *Bowman v. MetroHealth Sys.*, No. 1:25-cv-256, 2025 WL 3267906, at *3 (N.D. Ohio Nov. 24, 2025) (citing *Dep't. of Labor v. Am. Heathcare Servs., LLC*, 762 F. Supp. 3d 666, 679 (S.D. Ohio 2025) (collecting cases)).

As previously stated, Yamada posits that the donning and doffing Kendall and his coworkers allegedly engaged in does not amount to compensable work under the FLSA.  (Doc. No. 7 at PageID 68-69.)  Yamada's argument on this front is twofold.  First, Yamada contends that Kendall's uniform and gear are nothing more than ordinary clothing and time spent changing clothing is excluded from the FLSA's definition of work by 29 U.S.C. § 203(o).  (*Id.* at PageID 69-73.)  Second, Yamada claims that, because Kendall and his colleagues were allowed to change

into and out of their uniforms at home, such donning and doffing cannot be compensable.  (*Id.* at

PageID 73-74.)  According to the Defendant company, changing into and out of one's uniform is

simply not sufficiently integral and indispensable to an employee's compensable work where the

employee has the option to change at home.  (*Id.* at PageID 74.)

Upon consideration, the Court first rejects Yamada's position regarding 29 U.S.C. §

203(o)'s exclusion from the definition of work.   The FLSA does not offer a definition of "work,"

as that term is used in the statute.  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005).  The Supreme

Court has filled the gap, defining "work," broadly "as 'physical or mental exertion (whether

burdensome or not) controlled or required by the employer and pursued necessarily and primarily

for the benefit of the employer and his business.'"  *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S.

27, 31 (2014) (quoting *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598

(1944)).

Notwithstanding, Congress has expressly excluded certain activities from the definition of

"work," with statutes like 29 U.S.C. § 203(o).  *See Franklin*, 619 F.3d at 610.  Pertinent here,

Section 203(o) provides:

> In determining for the purposes of sections 206 and 207 of this title the hours for
> which an employee is employed, there shall be excluded any time spent in changing
> clothes or washing at the beginning or end of each workday *which was excluded
> from measured working time during the week involved by the express terms of or
> by custom or practice under a bona fide collective-bargaining agreement
> applicable to the particular employee.*

29 U.S.C. § 203(o) (*emphasis added*).

While a couple of unpublished cases appear to have considered this to be a categorical

exclusion, binding authorities reviewing the issue tend to emphasize the importance of a bona fide

collective bargaining agreement to Section 203(o)'s application.  *See Sandifer v. U.S. Steel Corp.*,

571 U.S. 220, 226 (2014) ("time spent changing clothes or washing is a subject appropriately

committed to collective bargaining"); *see also Franklin*, 619 F.3d at 613 (because Section 203(o) "as it was originally introduced would have permitted an employer and employee to bargain away *any* activity performed by an employee so long as it was done by express terms or it was a custom or practice of a CBA, the Conference Committee narrowed the amendment to include only changing clothes and washing" (*emphasis in original*) (internal quotation marks omitted)).  In essence, the statute calls on courts to "interpret the FLSA to respect the deals employers and unions strike." *Abadeer v. Tyson Foods, Inc.*, 14 F. Supp. 3d 1062, 1077 (M.D. Tenn. 2014).

Here, the Court finds 29 U.S.C. § 203(o) to be inapplicable to Kendall's claims because he and similarly situated Yamada employees were allegedly not subject to any collective bargaining agreement.  If they were, Kendall and his coworkers could certainly bargain to exclude donning and doffing their uniforms from the realm of compensable activity.  Yet, without a collective bargaining agreement, there are no express terms, policies, or customs for the Court to respect.

To read the statute as a categorical exclusion, as Yamada urges, would be to sever the collective bargaining language from Section 203(o) altogether.  Put another way, were changing clothes always excluded from the definition of work, there would be no reason for Congress to specifically refer to what is contained in an employee's collective bargaining agreement.  In the end, if Congress intended the statute to exclude changing clothes from compensable work, the legislative body knew how to say as much.  The fact that Congress did not is telling.  As such, the Court finds that the exclusion contained in 29 U.S.C. § 203(o) is inapplicable to Kendall's case.

In its latter argument, Yamada contends that the donning and doffing described in Kendall's Amended Complaint cannot be compensable activity because Kendall and those employees similarly situated to him were permitted to take their uniforms home with them.  (Doc. No. 7 at PageID 73-74.)  Relying primarily on a 2006 advisory memorandum by the Department

8

of Labor, Yamada avers that, where the company did not mandate its employees change on-site, donning and doffing the Yamada uniform was necessarily not a compensable principal activity. (*Id.*) For his part, Kendall leans on the allegation that he and the vast majority of his fellow technicians changed on-site as a matter of practical necessity. (Doc. No. 11 at PageID 119.) In short, Kendall says that Yamada's policy permitting employees to take their uniforms home did not actually offer those employees a meaningful option to change at home. (*Id.*) Without the equipment necessary to store and clean their uniforms, Kendall submits that the provided option to change at home was one that came with unsustainable risks. (*Id.*)

Building upon the Supreme Court's definition of "work," Congress amended the FLSA with the Portal-to-Portal Act to declare that compensable activities are the principal activities an employee is hired to perform. *See* 29 U.S.C. § 254(a). As relevant here, the Portal-to-Portal act specifically exempts from compensable activity, those:

> …
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

*Id.* In that vein, the Supreme Court "has consistently interpreted 'the term principal activity or activities [to] embrac[e] all activities which are an integral and indispensable part of the principal activities.'" *Integrity Staffing*, 574 U.S. at 33 (quoting *IBP, Inc.*, 546 U.S. at 29-30) (alterations in original) (citation and internal quotation marks omitted). To be sure, the Department of Labor has conformed its regulations to this interpretation. *See* 29 C.F.R. § 790.8(b).

The same regulations also explain that "[a]mong the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its

9

performance." 29 C.F.R. § 790.8(c).  The Sixth Circuit has adopted an inclusive view of the phrase "integral and indispensable," to consider three factors: "'(1) whether the activity is required by the employer; (2) whether the activity is necessary for the employee to perform his or her duties; and [(3)] whether the activity primarily benefits the employer.'"  *Franklin*, 619 F.3d at 620 (quoting *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1344 (11th Cir. 2007)).  In Kendall's case, the first and third of these factors require little examination.  Yamada required Kendall and his coworkers to change and clean their uniforms and offered on-site facilities to do so, but there are not enough facts available to say whether that requirement primarily benefitted Yamada.  Thus, the viability of Kendall's donning and doffing claim at this stage turns on the necessity of changing into and out of his uniform, particularly on Yamada's premises.

"'[W]here the changing of clothes on the employer's premises is required by law, by rules of the employer, or by the nature of the work, the activity may be considered integral and indispensable to the principal activities.'"  *Franklin*, 619 F.3d at 619 (quoting *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004)) (emphasis omitted) (citation and internal quotation marks omitted).  Such necessity may be evinced by the nature of the work an employee was hired to perform, particularly "when an employee could not dispense with [changing] without impairing his ability to perform the principal activity safely and effectively."  *Tyger v. Precision Drilling Corp.*, 78 F.4th 587, 593-94 (3rd Cir. 2023) (citing *Integrity Staffing*, 574 U.S. at 37-38) (internal quotation marks omitted).[1]  Moreover, not every employee need change on the employer's premises for the activity to be integral and indispensable.  *Id.* at 593.  "It is enough that

---

[1] The Court separately notes that the Third Circuit in *Tyger* expresses self-assuredness in its analysis by finding it to be in keeping with the Sixth Circuit's decision in *Franklin*.  *Tyger*, 78 F.4th at 594 (citing *Franklin*, 619 F.3d at 619-20).

the vast majority do so 'regularly' out of practical necessity or in line with industry custom."
*Tyger*, 78 F.4th at 593 (citing *Steiner v. Mitchell*, 350 U.S. 247, 250-51 & n.1 (1956)).

At bar, the fact that Yamada gave Kendall and the proposed collective the option to change at home does not dispose of the issue. Kendall has alleged that he and the vast majority of his colleagues consistently changed in Yamada's on-site locker room every day because they did not have the means to safely store and clean their uniforms at home. In other words, they allegedly did not have the ability to don and doff their uniforms at home, even if Yamada technically afforded its employees the option. Indeed, even the Department of Labor memorandum relied on by Yamada here accounts for this scenario, advising that the agency would not consider changing to be a principal activity "if employees have the *option and ability* to change into the required gear at home." Wage & Hour Adv. Mem. No. 2006-2, at 3 (May 31, 2006) (*emphasis added*).

Furthermore, Kendall has otherwise adequately alleged that the equipment Yamada required its employees to wear each day is made necessary, and, therefore integral and indispensable, by the nature of the work performed. Kendall clearly alleges that the uniform and protective gear he donned and doffed protected him from a variety of burns, chemical hazards, mechanical hazards, and dangerous pathogens. Based upon this assertion, the Court can plausibly infer that to dispense with the Yamada uniform would subject employees to conditions which would make it impossible for technicians like Kendall to perform their principal duties safely.

In total, the Court finds Kendall's allegations plausibly describe a scenario where Yamada employees needed their uniforms to do their jobs and did not have an actionable option to change into and out of those uniforms at home. Taking those allegations as true, Kendall has then stated a claim to overtime wages for the time spent donning and doffing each workday. Accordingly,

11

Yamada's Motion is **DENIED** with respect to Counts I and II of the Amended Complaint for violations of the FLSA and OMFWSA.

### b. **OPPA**

The Court looks now to Kendall's OPPA claim. As relevant to the Court's analysis, OPPA requires:

> (A) Every employer doing business in this state shall, on or before the first day of each month, pay all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month. If at any time of payment an employee is absent from the employee's regular place of labor and does not receive payment of wages through an authorized representative, such person shall be entitled to said payment at any time thereafter upon demand upon the proper paymaster at the place where such wages are usually paid and where such pay is due. This section does not prohibit the daily or weekly payment of wages.
>
> …
>
> (B) Where wages remain unpaid for thirty days beyond the regularly scheduled payday or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employee of a claim or for sixty days beyond the date of the agreement, award, or other act making wages payable and no contest court order or dispute of any wage claim including the assertion of a counterclaim exists accounting for nonpayment, the employer, in addition, as liquidated damages, is liable to the employee in an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater.

Ohio Rev. Code § 4113.15.

Yamada first argues that Kendall cannot maintain a class action under OPPA, as such a class action would impermissibly contravene the opt-in requirements of the FLSA and OMFWSA. (Doc. No. 7 at PageID 65-66.) This argument is of no real moment though. It is generally well-settled that a plaintiff may plead an OPPA class action alongside his FLSA collective action. *See Oglesby v. FedEx Ground Package Sys., Inc.*, No. 3:20-cv-346, 2023 WL 2596030, at *5 (S.D. Ohio Mar. 22, 2023) (collecting cases).

More substantively, Yamada posits that Kendall's OPPA claim fails because the wages which would otherwise be due under that statute are disputed.  (Doc. No. 7 at PageID 67-68.)  In retort, Kendall suggests that the question of whether wages are disputed is reserved for plaintiffs seeking liquidated damages under Ohio Rev. Code § 4113.15(B).  (Doc. No. 11 at PageID 110-13.)  Kendall instead submits that he has pled an OPPA cause of action for the prompt payment of wages actually owed under Ohio Rev. Code § 4113.15(A).  (*Id.*)  And, at any rate, Kendall says that his Amended Complaint does not allege a dispute over the wages at issue for the purposes of OPPA.

As a matter of statutory construction, Sub-Parts (A) and (B) of OPPA must be read together, rather than being read disjunctively.  *See e.g.*, *Garner v. Cleveland Clinic Found.*, 735 F. Supp. 3d 867, 879-80 (N.D. Ohio 2024) ("The [c]ourt finds that OPPA does not present separate causes of action in Paragraph A versus Paragraph B … Paragraph (A) does not present a separate cause of action, but must be read in conjunction with Paragraph (B)" (internal citation omitted)).  By this token, courts both within and without the State of Ohio have found "that 'Section 4113.15(A) defines the time frame in which an employer must pay its employees their wages earned and Section 4113.15(B) describes the liquidated penalty for not paying wages in the time proscribed by statute.'"  *Morse v. Fifty West Brewing Co. LLC*, No. 1:21-cv-377, 2026 WL 872459, at *17 (S.D. Ohio Mar. 30, 2026) (quoting *In re Lowe's Cos., Inc. Fair Labor Standards Act & Wage & Hour Litig.*, 517 F. Supp. 3d 484, 514 (W.D.N.C. 2021); also citing *Garner*, 735 F. Supp. 3d at 879-80); *see also Myers v. Integra LifeSciences Corp.*, No. CV 24-8966, 2025 WL 2164061, at *7 (D.N.J. July 30, 2025) (after reviewing collected cases, the court concluded "that a plaintiff is precluded from bringing a claim under § 4113.15, [OPPA], where a legitimate dispute exists as to what wages, if any, are due").

13

Working to discern the prevalence of a dispute as to wages, the Court finds the Sixth Circuit's hypothetical reasoning in *O'Brien v. Ed Donnely Enterprises, Inc.*, 575 F.3d 567 (6th Cir. 2009), to be instructive.  There, the court opined that, "if plaintiffs had evidence that the wages were withheld even though defendants conceded or reasonably had to concede that the wages were due, such evidence—like evidence about clerical glitches or cash-flow problems—could create a triable issue of fact on [an OPPA] claim." *O'Brien*, 575 F.3d at 579.  To rephrase this as a broadly applicable concept, a district court may be "aided in its consideration of … whether there was a contest or dispute 'accounting for nonpayment,'" by determining whether the defendant employer has a "reasonable basis" for disputing the plaintiff's claim to overdue wages. *Id.* at 578-79.

Returning to the matter at hand, the Court finds there is no dispute as to wages precluding Kendall's OPPA claim at this time.[2]  Recall that the Court must accept the allegations of Kendall's Amended Complaint and run with them at this point in the litigation.  The Amended Complaint does not allege any dispute regarding the wages Kendall has placed at issue.  Rather, Kendall pleads his case to presume the wages he seeks are due and have only not been paid as a consequence of Yamada's willful violations of the law.  (Doc. No. 6 at PageID 51-52.)  The Court is confident that a willful violation of law cannot supply a reasonable basis for dispute.  Whether Kendall's presumption of wages due will be borne out by the facts is simply a matter for another day.  For now, it is enough that he has pled the presumption.  Therefore, the Court **DENIES** Yamada's Motion with respect to Kendall's OPPA class action claim.

---

[2] While not particularly pertinent to the Court's analysis, for the sake of clarity, the Court is compelled to rebuff the assertion that Kendall has made no plea for liquidated damages under Section 4113.15(B). On the face of the Amended Complaint, Kendall expressly prays that the Court "[a]ward [him] and the Regular Rate Class actual damages for unpaid wages plus liquidated damages under Ohio Rev. Code § 4113.15." (Doc. No. 6 at PageID 58.)

14

### c.  **Supplemental Jurisdiction**

The Court lastly turns its focus to the propriety of exercising supplemental jurisdiction over Kendall's state law causes of action for unjust enrichment and relief under OPPA.  Yamada couches its argument in this regard within the notion that Kendall's state law claims will invariably predominate his FLSA claim.  (Doc. No. 7 at PageID 80.)  Though, in truth, Yamada really just contends the Court should not exercise supplemental jurisdiction here because the FLSA's opt-in collective action procedures are incompatible with the opt-out procedures of his state law class actions.  (*Id.* at PageID 75-79.)

The Court finds it is perfectly appropriate to exercise supplemental jurisdiction in this matter.  Generally, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to the claims in the action within such original jurisdiction such that they form part of the same case or controversy …." 28 U.S.C. § 1367.  "Claims form part of the same case or controversy when they 'derive from a common nucleus of operative facts.'" *Blakely v. U.S.*, 276 F.3d 853, 861 (6th Cir. 2001) (quoting *Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 454-55 (6th Cir. 1996)).  Here, there can be no doubt that Kendall's state law claims share a common nucleus of operative fact with his FLSA claim.  All of Kendall's claims seek payment of the same wages for the same activity, after all.  Moreover, the Court is unpersuaded that Kendall's state law class actions contravene the opt-in requirements of the FLSA.  Indeed, "there is no inherent incompatibility between an opt-in FLSA collective action and an opt-out Rule 23 class action." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 181-82 (S.D. Ohio 2012) (collecting cases).  Hence, the Court **DENIES** Yamada's Motion on the issue of whether to exercise supplemental jurisdiction.

## IV.  <u>CONCLUSION</u>

In accordance with the foregoing, the Court hereby **DENIES** Defendant Yamada North America, Inc.'s Partial Motion to Dismiss Plaintiff's Amended Complaint and Memorandum in Support (Doc. No. 7), in its entirety.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, June 16, 2026.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE